Michael P. Monaco
Song Mondress PLLC
720 Third Avenue, Suite 1500
Seattle, WA 98104
Telephone: (206) 398-1500
Facsimile: (206) 398-1501
E-mail: mmonaco@songmondress.com

Ronald L. Bliss
Bliss, Wilkens & Clayton
500 L Street, Suite 200
Anchorage, AK 99501
Telephone: (907) 276-2999
Facsimile: (907) 276-2956
E-mail: rlb@bwclawyers.com

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| JUSTIN OLSEN, <br><br> Plaintiff, <br><br> v. <br><br> ALASKA TEAMSTER-EMPLOYER WELFARE PLAN, and THE BOARD OF TRUSTEES, <br><br> Defendants. | Case No. 4:11-cv-00015-RRB |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS NON-ERISA CLAIMS

**I.  Introduction**

Defendant Alaska Teamster-Employer Welfare Plan ("Plan") is a multiemployer employee benefit plan governed by the Employee Retirement Income Security Act of 1974

Mem. in Support of Dfts' Mot. To
Dismiss Non-ERISA Claims
Page 1 of 19

Olsen v. Alaska Teamst.-Empl. Welfare Plan, *et al*
4:11-cv-00015-RRB

("ERISA"), 29 U.S.C. § 1001, *et seq*, and is sponsored and administered by Defendant Board of Trustees.  The Plan provides health and other benefits to qualifying employees.  Plaintiff's First Amended Complaint ("Amended Complaint") in this action seeks payment of damages for pain and suffering, emotional distress, and loss of consortium allegedly suffered as a result of the Plan's denial of his claim for medical benefits, and asserts claims for breach of fiduciary duty, breach of contract, and statutory penalties under ERISA.[1]

Each of these four claims asserted by Plaintiff - i.e., (a) damages for pain and suffering, emotional distress, and loss of consortium, (b) breach of contract, (c) breach of fiduciary duty, and (d) ERISA penalties – is subject to dismissal or partial dismissal for failure to state a claim upon which relief can be granted.  First, because extra-contractual and compensatory damages are not recoverable under ERISA, Plaintiff's claims for pain and suffering, emotional distress, and loss of consortium fail to state a claim.  Second, ERISA precludes any state or federal common law claims for breach of contract (as any such claims are completely preempted and precluded by ERISA and its provision for a claim for benefits due).

Third, Plaintiff's fiduciary breach and structural conflict of interest claims are subject to dismissal on multiple independent grounds: (1) Plaintiff's fiduciary breach claims are duplicative of his benefit claim under ERISA § 502(a)(1)(B); (2) as a matter of law, multiemployer plan trustees like those herein do not operate under any structural conflict of interest; (3) Plaintiff's assertion that a structural conflict of interest provides an independent ground for relief under ERISA is unprecedented and unsupported by any authorities; and (4) Plaintiff has not made any factual allegations sufficient to support an ERISA fiduciary breach claim.

---

[1] The Amended Complaint also seeks payment of medical benefits alleged to have been wrongfully denied, attorneys' fees and costs, pre- and post-judgment interest, and other relief under ERISA.  Dkt. No. 17, p. 13-14 ("Request for Relief").  These claims are not at issue in this motion.

Mem. in Support of Dfts' Mot. To  
Dismiss Non-ERISA Claims  
Page 2 of 19

Olsen v. Alaska Teamst.-Empl. Welfare Plan, *et al*  
4:11-cv-00015-RRB

Finally, to the extent that Plaintiff seeks daily penalties under ERISA § 502(c) dating from his initial claim submission on or around March 31, 2010 forward, his penalties claim is also subject to dismissal on multiple independent grounds: (1) Plaintiff admittedly received two separate responses to his initial claim submission within 30 days of his request, negating any possible claim under ERISA § 502(c); (2) Plaintiff's assertion that he is entitled to statutory penalties simply because he received an unfavorable determination on his benefit claim is baseless and unprecedented; and (3) Plaintiff has not made any factual allegations to support a claim that the Plan failed to respond to an information request in connection with his March 31, 2010 claim submission.

Accordingly, Defendants respectfully request that the following claims be dismissed: breach of contract; fiduciary breach and "structural conflict of interest"; pain and suffering, emotional distress, and loss of consortium damages; and penalties in connection with Plaintiff's initial March 31, 2010 claim submission.

## II.   Factual Background

The factual background herein is limited to the relevant well-pled allegations of the Amended Complaint and documents referenced therein or integral thereto.[2]  The Plan is a self-funded employee health and welfare benefit plan governed by ERISA, and is sponsored and administered by its Board of Trustees. Dkt. No. 17, ¶¶ 1, 3, 5, 6, 7. Plaintiff Justin Olsen was a participant in the Plan, and was entitled to receive health benefits to the extent provided under the Plan's terms and conditions. *Id.,* ¶¶ 5, 9.

---

[2] The terms and conditions of benefits provided under the Plan to Plaintiff at the time of his claim submission were contained in a Summary Plan Description effective January 1, 2007. Declaration of Rose Kalamarides, Ex. 1. When reviewing a 12(b)(6) motion to dismiss, this Court may consider the Complaint, as well as documents not explicitly referenced in the Complaint that are integral to the Plaintiff's claims. *Fields v. Legacy Health System*, 413 F.3d 943, 958 (9th Cir. 2005). As required for purposes of a motion to dismiss under FRCP 12(b)(6), Defendants assume the truth of the well-pled allegations in the Amended Complaint; however, Defendants do not admit the truthfulness or accuracy of any factual allegation contained in the Amended Complaint by filing this motion.

On or about March 31, 2010, Plaintiff filed a claim for preauthorization of temporomandibular joint (TMJ) reconstruction. *Id.,* ¶¶ 10, 11. On or about April 12, 2010, Plaintiff's request was denied by Qualis Health, a utilization management organization engaged by the Plan to review claims requiring preauthorization, based on Qualis Health's determination that TMJ had not been shown to be medically necessary in Plaintiff's case. *Id*., ¶ 16. On or about April 23, 2010, the Plan issued a separate denial decision regarding Plaintiff's initial submission to Qualis Health. *Id.*, ¶ 17. Plaintiff appealed Qualis Health's denial of preauthorization, and on or about May 11, 2010, that appeal was denied by Qualis Health, which again found the proposed TMJ surgery not to be medically necessary. *Id.,* ¶ 19.

On or about June 3, 2010, Plaintiff appealed Qualis Health's May 11, 2010 denial decision. *Id.,* ¶ 20. The Administrative Committee for the Plan considered Plaintiff's appeal, and directed that an additional medical review be performed by AllMed. *Id.*, ¶ 22. On or about August 23, 2010, after another administrative hearing, Plaintiff's claim for medical benefits was denied by the Plan's Administrative Committee as not medically necessary; the Administrative Committee had based its decision on the determinations by both independent medical consultants Qualis Health and AllMed, finding that Plaintiff's proposed TMJ surgery had not been shown to be medically necessary. *Id.,* ¶¶ 21-25.

### III. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Department,* 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts,* 717 F.2d 1295, 1301 (9th Cir. 1983). To survive a motion to dismiss, the complaint

does not require detailed factual allegations but must provide the grounds for relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009). However, factual allegations "must be enough to raise a right to relief above the speculative level," *Cook v. Brewer*, 637 F.3d 1002, 1006 (9th Cir. 2011), and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 129 S.Ct. at 1949.

IV. **Argument**

    A. <u>ERISA Governs the Permissible Claims in This Action</u>.

Plaintiff's allegations concededly concern an ERISA-governed plan. Dkt. No. 17, ¶¶ 1, 3, 5. The Supreme Court has noted that Congress's intent in enacting ERISA was to provide "a uniform regulatory regime over employee benefit plans . . . ." *Aetna Health Inc., v. Davila*, 542 U.S. 200, 208 (2004) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). ERISA therefore includes a comprehensive civil enforcement mechanism, ERISA § 502, 29 U.S.C. § 1132, which the Supreme Court has held essential to ensurr that ERISA benefit plans are subject to a single set of regulatory requirements:

> The detailed provisions of § 502(a) [29 U.S.C. § 1132(a)] set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. 'The six carefully integrated civil enforcement provisions found in [29

Mem. in Support of Dfts' Mot. To                      Olsen v. Alaska Teamst.-Empl. Welfare Plan, *et al*
Dismiss Non-ERISA Claims                                           4:11-cv-00015-RRB
Page 5 of 19

U.S.C. § 1132(a)] of the statute as finally enacted . . . provide strong evidence that *Congress did not intend to authorize other remedies* that it simply forgot to incorporate expressly.'"[3]

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) (quoting *Massachussetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)) (emphasis added).  Simply put, because ERISA provides a set of *exclusive* remedies for *all* actions regarding ERISA plans, Plaintiff cannot seek any relief other than what is provided by ERISA.

      B.    <u>ERISA Precludes Plaintiff's Claims for Pain and Suffering, Emotional Distress, and Lack of Consortium Damages</u>.

Plaintiff improperly seeks damages for pain and suffering, emotional distress, and loss of consortium, which he alleges to have suffered as a result of the Plan's denial of his claim for medical benefits.  Dkt. No. 17, ¶¶ 31, 37, pp. 13-14 (request for relief).  Alternatively, Plaintiff asserts that this relief is available to him for breach of contract, *id.,* ¶ 41, or for breach of fiduciary duty, *id.*, ¶ 47.  Regardless of how Plaintiff chooses to characterize them, however, any such claims (like *all* claims for extra-contractual damages) are barred by ERISA.

As noted above, ERISA provides the "*exclusive* vehicle" for any claims related to Plaintiff's benefits from the Plan.  *Pilot Life*, 481 U.S. at 52 (emphasis added).  And under ERISA, it is well established that extra-contractual, compensatory, and punitive damages are not recoverable.  *Bast v. Prudential Insurance Company of America*, 150 F.3d 1003, 1008-1009 (9th Cir. 1998) (citing *Massachussetts Mut. Life Ins. Co.*, 473 U.S. at 146).  The Ninth Circuit has

---

[3] The specific causes of action available to a participant or beneficiary under ERISA's civil enforcement provisions include: (1) an action to recover benefits due under the plan, to enforce rights under the terms of the plan, or to clarify rights to future benefits under the terms of the plan, ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); (2) an action for breach of fiduciary duties, ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2);  (3) an action to enjoin any act or practice in violation of ERISA or the terms of the plan or to obtain other appropriate equitable relief to redress violations of ERISA or the terms of the plan, ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); and  (4) an action for daily penalties for a plan administrator's refusal to supply certain information within 30 days of a request, ERISA § 502(c), 29 U.S.C. § 1132(c).

Mem. in Support of Dfts' Mot. To       Olsen v. Alaska Teamst.-Empl. Welfare Plan, *et al*
Dismiss Non-ERISA Claims      4:11-cv-00015-RRB
Page 6 of 19

repeatedly held that damages for emotional distress, pain and suffering, loss of consortium, and other claims beyond the benefits allegedly improperly denied simply cannot be recovered under ERISA. *Zavala v. Trans-System, Inc.,* 258 Fed. Appx. 155 (9th Cir. 2007)*; Bast*, 150 F.3d at 1008-1009; *McLeod v. Oregon Lithoprint Inc.*, 102 F.3d 376 (9th Cir. 1996). Thus, Plaintiff's claims for pain and suffering, emotional distress, and loss of consortium damages must be dismissed.[4]

  C. <u>Plaintiff's Breach of Contract Claim Must Be Dismissed</u>.

Plaintiff also seeks damages for breach of contract. Dkt. No. 17, at 11 ("Request for Relief"). Specifically, Plaintiff's third cause of action asserts that the Plan's denial of benefits constituted a breach of contract for which he is entitled to recover benefits, as well as damages for pain and suffering, emotional distress, and loss of consortium. *Id.,* ¶¶ 39-42. It is unclear from the Amended Complaint whether Plaintiff seeks this relief under federal common law or state law.[5] However, in either case, Plaintiff's claim fails to state a claim upon which relief can be granted, and the breach of contract claim should also be dismissed.

    1. *Any State Law Claim of Breach of Contract Is Preempted by ERISA*.

---

[4] Even if Plaintiff did not concede that his claims arise solely under ERISA, any attempt to raise claims for emotional distress, pain and suffering, loss of consortium, or other extra-contractual relief under state law would be completely preempted by ERISA in any event. Any state law claim that comes within the scope of ERISA's civil enforcement provisions "duplicates, supplements, or supplants the ERISA civil enforcement remedy" and "conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health*, 542 U.S. at 209. Following *Aetna Health,* the Ninth Circuit has held that attempts to obtain relief outside of what ERISA provides are preempted, including extra-contractual and compensatory damages. *Elliot v. Fortis Benefits Ins. Co.*, 337 F.3d 1138, 1146-47 (9th Cir. 2003); *Bast*, 150 F.3d at 1008-1010. Actions seeking non-ERISA compensatory or punitive damages in what is essentially a "claims processing" cause of action clearly fall within the preemptive scope of 29 U.S.C. § 1132(a) under *Pilot Life*. *Elliot*, 337 F.3d at 1146-47. Thus, any attempt to seek this relief under state law, rather than ERISA, would also be subject to dismissal under FRCP 12(b)(6).

[5] The Amended Complaint states generally that "this action is brought under 29 U.S.C. §§ 1132(a), (c), (e), (f) and (g)," Dkt. No. 17, ¶ 1, and that "this action is also brought as a breach of the contract between Plaintiff and the [Trust]." *Id.*, ¶ 2. The Amended Complaint does not specify whether Plaintiff intends for his breach of contract claim to be asserted under ERISA or state law.

Mem. in Support of Dfts' Mot. To  Olsen v. Alaska Teamst.-Empl. Welfare Plan, *et al*
Dismiss Non-ERISA Claims  4:11-cv-00015-RRB
Page 7 of 19

To the extent that Plaintiff intends his breach of contract claim as a state law cause of action, it is completely preempted by ERISA and must be dismissed. Any state statutory or common law cause of action that falls within the scope of ERISA's comprehensive civil enforcement provisions is completely preempted. *Cleghorn v. Blue Shield of California,* 408 F.3d 1222, 1225-26 (9th Cir. 2005). Complete preemption occurs whenever Congress so completely preempts a particular area that "any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63-64 (1987). Any state or common law claim that comes within the scope of the enforcement provision of 29 U.S.C. § 1132(a), and thereby "duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc.*, 542 U.S. at 209; *see also Pilot Life*, 481 U.S. at 54-56.

Accordingly, the Supreme Court and Ninth Circuit have held that state statutes and common law doctrines attempting to supplement or displace ERISA's civil remedies, including state contract and tort actions regarding ERISA benefit claims, are preempted by ERISA. *Pilot Life*, 481 U.S. at 50-55 (state law breach of contract and bad faith claims preempted); *Wise v. Verizon Communications, Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) (state law fraud, misrepresentation, and negligence claims preempted). Moreover, attempts to obtain relief outside of what is provided for by ERISA's civil enforcement mechanism are also preempted, including extra-contractual, compensatory, and punitive damages. *Elliot v. Fortis Benefits Ins. Co.*, 337 F.3d 1138, 1146-47 (9th Cir. 2003). The Ninth Circuit noted in *Elliot* that an action seeking non-ERISA compensatory or punitive damages in what is essentially a "claims

Mem. in Support of Dfts' Mot. To
Dismiss Non-ERISA Claims
Page 8 of 19

Olsen v. Alaska Teamst.-Empl. Welfare Plan, *et al*
4:11-cv-00015-RRB

processing" cause of action clearly falls within the preemptive scope of 29 U.S.C. § 1132(a) under *Pilot Life*. *Elliot*, 337 F.3d at 1146.

Here, as in the cases above, Plaintiff's claims arise directly out of the substantive terms and administration of the Plan – i.e., whether Plaintiff was properly denied benefits by the Plan. Dkt. No. 17, ¶¶ 1, 3, ¶¶ 38-42.  Thus, any claims that Plaintiff may wish to pursue in this action *must* be pursuant to ERISA, as 29 U.S.C. § 1132(a) is the "exclusive vehicle for actions by ERISA plan participants."  *Pilot Life*, 481 U.S. at 52.  Accordingly, if Plaintiff's breach of contract claim is intended as a state law cause of action, it is completely preempted, and should therefore be dismissed for failure to state a claim.

> 2. *Neither ERISA Nor the Federal Common Law Authorizes Actions for Breach of Contract.*

Plaintiff is also not entitled to relief for breach of contract under ERISA.  It is well-established that ERISA's civil enforcement provisions are the exclusive remedies for benefit claim disputes, and claims relating to ERISA plans must invoke the specific causes of action under ERISA.  *Lea v. Republic Airlines, Inc.,* 903 F.2d 624, 632 (9th Cir. 1990).  Breach of contract is not a cause of action authorized under ERISA, and the Ninth Circuit has expressly refused to create a federal common law cause of action for breach of contract, noting that doing so would circumvent Congress's intention that ERISA's remedial scheme be exclusive.  *Lea*, 903 F.2d at 631-33 (citing *Russell,* 473 U.S. at 146); *see Pacificare Inc. v. Martin*, 34 F.3d 834, 835-36 (9th Cir. 1994) ("the Ninth Circuit has expressly refused to create federal common law causes of action under ERISA").

Mem. in Support of Dfts' Mot. To Dismiss Non-ERISA Claims
Page 9 of 19

Olsen v. Alaska Teamst.-Empl. Welfare Plan, *et al*
4:11-cv-00015-RRB

### D. Plaintiff's Claims of Breach of Fiduciary Duty and "Structural Conflict of Interest" Must Be Dismissed.

Plaintiff's Amended Complaint asserts some form of fiduciary breach occurred in the denial of his benefit claim, but Plaintiff has not identified any particular fiduciary duty that has been breached, detailed any specific actions that allegedly constituted a fiduciary breach, or even asserted what provision of ERISA would entitle him to relief for such a breach.[6] The Amended Complaint suggests that whatever breach allegedly occurred emanated from a "structural conflict of interest" regarding the Trustees' alleged desire to "increase the financial viability" of the Plan. Dkt. No. 17, ¶¶ 45-46. Plaintiff's conclusory assertions not only fail to state claim for ERISA fiduciary breach, but refute any such claim in multiple ways.

#### 1. *Plaintiff's Fiduciary Breach Claim is Duplicative of His Benefits Claim*.

In conjunction with his conclusory assertions of fiduciary breach related to his benefits claim, Plaintiff's Amended Complaint improperly seeks payment of medical benefits and damages for pain and suffering, emotional distress, and loss of consortium, Dkt. No. 17, ¶¶ 43-48 – precisely the same relief sought on Plaintiff's claim for benefits under ERISA § 502(a)(1)(B). Because Plaintiff's claim of fiduciary breach simply "repackages" his ERISA claim for improperly-denied Plan benefits, ERISA requires that the duplicative claim for fiduciary breach be dismissed.

Although plan participants can bring individualized fiduciary breach claims under ERISA § 502(a)(3) in certain circumstances, *Varity,* 516 U.S. at 515, such a claim cannot be merely a

---

[6] Notwithstanding the Amended Complaint's failure to identify a particular section of ERISA for the fiduciary breach claims, it appears that Plaintiff seeks relief pursuant to ERISA § 502(a)(3). The only other fiduciary breach claim available under ERISA, one brought pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), can only be brought on behalf of the plan as a whole and cannot be the basis for relief to an individual participant. *E.g., Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 142 n.9 (1985). As Plaintiff's Amended Complaint does not purport to seek relief on behalf of the Plan, and because the relief Plaintiff seeks is expressly limited to payment of benefits and other individualized damages, it appears that Plaintiff's only potential fiduciary breach claim is under ERISA § 502(a)(3). *See, e.g., Varity Corp. v. Howe,* 516 U.S. 489, 515 (1996).

Mem. in Support of Dfts' Mot. To Dismiss Non-ERISA Claims
Page 10 of 19

Olsen v. Alaska Teamst.-Empl. Welfare Plan, *et al*
4:11-cv-00015-RRB

"repackaged" benefit claim under ERISA § 502(a)(1)(B) that has been dressed up as a fiduciary breach claim.  *Zucker v. ConAgra Foods, Inc.,* 2011 WL 1565357, *2-3 (E.D. Wash. 2011); *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Arizona, Inc.*, 661 F. Supp. 2d 1076, 1090 (D. Ariz. 2009); *Gallagher v. Life Ins. Co. of North America*, 2008 WL 753733, *12 (N.D. Cal. 2008); *Garvey v. Piper Rudnick LLP Long Term Disability Ins. Plan*, 2008 WL 410088, *6-7 (D. Or. 2008).

Here, as in each of the cases above, Plaintiff's fiduciary breach claim is based solely on the alleged mishandling of his benefits claim, and seeks exactly the same relief as his benefits claim.  Dkt. No. 17, ¶¶ 35, 37, 47-48.  Plaintiff has done nothing more than attempt to repackage his ERISA § 502(a)(1)(B) benefits claim as a fiduciary breach claim under ERISA § 502(a)(3), which mandates dismissal of the purported fiduciary breach claim.  *Id*; *Varity,* 515 U.S. at 512.

   2.   *Plaintiff is Not Entitled to Relief On the Basis of An Asserted "Structural Conflict of Interest."*

Even if Plaintiff's claim of fiduciary breach did not merely duplicate his claim for Plan benefits, it would fail to state a claim because Plaintiff's conclusory assertions of the basis for an alleged fiduciary breach have been expressly rejected by the Ninth Circuit and other courts.

Completely ignoring directly contrary Ninth Circuit precedent as well as other caselaw, the Complaint repeatedly makes conclusory assertions that the Plan Trustees operated under an alleged "structural conflict of interest" resulting from an alleged interest in denying "valid and appropriate claims . . . in order to increase the financial viability of the Plan."  Dkt. No. 17, ¶¶ 45-46.  However, while a "structural conflict of interest" can occur in the case of *insurance companies* and other circumstances where there may be a financial incentive to deny valid claims for benefits, the Ninth Circuit and other courts have *expressly* rejected the notion that trustees of the type of multiemployer plan here operate under any such conflict of interest.

Mem. in Support of Dfts' Mot. To  
Dismiss Non-ERISA Claims  
Page 11 of 19

Olsen v. Alaska Teamst.-Empl. Welfare Plan, *et al*  
4:11-cv-00015-RRB

        a.       <u>As a Matter of Law, Multiemployer Plan Trustees Do Not Operate Under Any Conflict of Interest</u>.

The Supreme Court has held that a structural conflict of interest may exist where a single individual or entity both funds a plan and evaluates benefit claims. *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 112 (2008). This is so, the Court noted, because every dollar provided in benefits is a dollar spent by the insurance company or employer, and every dollar saved is an additional dollar of profit. *Id*. In construing this standard, however, the Ninth Circuit has expressly rejected the argument that multiemployer plan trustees, like the Defendants here, operate under any such conflict of interest. *Anderson v. Suburban Teamsters of Northern Illinois Pension Fund Bd. of Trustees*, 588 F.3d 641, 648 (9th Cir. 2009). In *Anderson*, the Ninth Circuit held that, unlike the single-employer plan at issue in *Glenn*,

> The various participating employers – not the Trustees – fund the Plan. The Trustees have no personal economic interest in the decision to grant or deny benefits. Additionally, the Board of Trustees consists of both employer and employee representatives, who determine employee eligibility under the Plan. Both sides are at the table. . . . For these reasons, *the Trustees did not have a conflict of interest.*

*Id*. (emphasis added). Ninth Circuit district courts have similarly held that the nature of multiemployer plans and their trustees, like the Defendants in this case, "do not give rise to a structural conflict of interest." *Trustees of the Southern California IBEW-NECA Pension Plan v. Rios*, 2009 WL 3232224, *6 (C.D. Cal. 2009) (holding no conflict in multiemployer plan funded by contributions of numerous employers, where trustees were responsible only for administration of a plan, the sole purpose of which was to ensure the availability and distribution of benefits to participants).

Here, as in *Anderson* and *Rios*, there is no conflict of interest: the Plan is a multiemployer plan funded by participating employers, not the Trustees. *See* Kalamarides Decl., Ex. 1, p. 81. Under the plain language of the Plan and ERISA, all Plan assets are held for the

Mem. in Support of Dfts' Mot. To  
Dismiss Non-ERISA Claims  
Page 12 of 19

Olsen v. Alaska Teamst.-Empl. Welfare Plan, *et al*  
4:11-cv-00015-RRB

exclusive purpose of providing benefits to Plan participants and beneficiaries, without any possibility of those assets reverting to any employer or individual Trustee. ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1); Kalamarides Decl., Ex. 1, p. 75 ("No Trust funds may revert to the Union, an Employer, an Employee or Plan Participant"). As required by law, the Board of Trustees is composed of equal numbers of union and management representatives. 29 U.S.C. § 186(c)(5); Kalamarides Decl., Ex. 1, p. 76. Just as in *Anderson* and *Rios*, there is no legal basis to conclude that the Trustees operated under a structural conflict of interest or thereby breached their fiduciary responsibility.

> b. An Alleged Structural Conflict of Interest Does Not Provide an Independent Basis for a Claim of Fiduciary Breach.

Even if the Trustees could be found to be operating under a structural conflict of interest, Plaintiff's unprecedented argument that the Trustees' interest in "[increasing] the financial viability of the Plan" could supply a basis for a separate fiduciary breach claim is without merit, and would produce absurd results if taken to its logical conclusion. Under ERISA, the existence of a structural conflict of interest is relevant in determining the standard of review to be applied to a benefit determination (*see Bruch v. Firestone Tire & Rubber Co.,* 429 U.S. 101 (1989); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967-69 (9th Cir. 2006)), but to Defendants' knowledge has *never* been held to support an independent fiduciary breach claim in all of the decades of ERISA's existence.

While no courts seem to have ever concluded that a "structural conflict of interest" can support a separate fiduciary breach claim, at least one district court in the Ninth Circuit has held to the contrary, concluding that while conflict of interest allegations are considered as part of a ruling on a plaintiff's benefit claim under ERISA § 502(a)(1)(B), they legally *cannot constitute* a separate ground for relief. *Boyd v. United Transportation Union Insurance Association*, 2006

Mem. in Support of Dfts' Mot. To
Dismiss Non-ERISA Claims
Page 13 of 19

Olsen v. Alaska Teamst.-Empl. Welfare Plan, *et al*
4:11-cv-00015-RRB

WL 581025, *4 (W.D. Wash. 2006).  Moreover, if Plaintiff were correct that a structural conflict of interest constitutes an independent ground for a fiduciary breach claim, the results would be absurd and contrary to decades of Supreme Court and Ninth Circuit precedent:  the issue being addressed in cases like *Glenn* and *Abatie* (and legions of others) would not be the appropriate standard of review to apply to benefit determinations, but the appropriate relief for the fiduciary breaches imputed as a result of the structural conflicts of interest present in every one those cases.  Such determinations of fiduciary breach, however, have never been premised on mere allegations of a "structural conflict of interest."

> 3. *Plaintiff Offers Only Conclusory Assertions and No Factual Allegations to Support a Claim of Fiduciary Breach*.

Finally, Plaintiff has failed to offer any factual allegations to support his scattershot, conclusory allegations of conflicts of interest and fiduciary breach.  Even if Plaintiff were correct that he was wrongfully denied benefits, the Ninth Circuit has consistently held that a "fiduciary's mishandling of an individual benefit claim does not violate any of the fiduciary duties defined in ERISA."  *Wise v. Verizon Communications Inc.,* 600 F.3d 1180, 1189 (9th Cir. 2010); *Ford*, 399 F.3d at 1082; *Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*, 861 F.2d 1406, 1414 (9th Cir. 1988).  Following these cases, district courts have dismissed ERISA § 502(a)(3) fiduciary breach claims that consist only of "very general assertion[s] that 'Defendant conducts its claims review process that results in the denial of valid claims' . . . and asks for a broad declaration that the Defendants have violated their fiduciary duties," as such claims "are based solely on the purported mishandling of [a] benefits claim."  *Zucker*, 2011 WL at *3; *see King v. Cigna Corp.*, 2007 WL 2288117, *12 (N.D. Cal. 2007) (dismissing fiduciary breach claim where complaint alleged nothing more than that "defendants breached their fiduciary

Mem. in Support of Dfts' Mot. To  
Dismiss Non-ERISA Claims  
Page 14 of 19

Olsen v. Alaska Teamst.-Empl. Welfare Plan, *et al*  
4:11-cv-00015-RRB

duties under ERISA by failing properly to investigate and administer . . . [claims] for . . . benefits," which amounted to an assertion that a benefits claim had been mishandled).

Here, as in *Zucker* and *King*, the entire basis for Plaintiff's purported fiduciary breach claim is his assertion that he was wrongfully denied benefits, and he has failed to allege anything more than that: the Amended Complaint alleges identical facts and seeks identical relief for both claims, and contains only conclusory allegations that the Trustees had a "structural conflict of interest" or incentive to deny valid claims. The Amended Complaint's broad, conclusory assertions are indistinguishable from those dismissed in the above-cited cases.

Because each of the three deficiencies identified above mandates dismissal of Plaintiff's claim for "structural conflict of interest" and fiduciary breach, Defendants request dismissal of that claim.

   E. <u>Plaintiff is Not Entitled to Penalties Under ERISA § 502(c)(1) in Connection With His Initial Claim for Benefits</u>.

Plaintiff seeks daily penalties of $110 per day resulting from the Plan's alleged failure to timely respond to Plaintiff's requests for certain documents, pursuant to ERISA § 502(c)(1).[7] While it is unclear exactly what types of penalties claims Plaintiff may wish to allege, he has expressly claimed that ERISA § 502(c)(1) penalties should apply to the entire period of over 600 days since March 2010, when his benefits claim was first submitted for determination by the Plan. *See* Dkt. No. 18, at 3. To the extent that Plaintiff seeks ERISA § 502(c)(1) penalties in connection with that initial claim for benefits, Plaintiff fails to state a claim upon which relief may be granted, and any such claims should be dismissed.

---

[7] ERISA § 502(c)(1) provides, in relevant part, that "any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary . . . by mailing the material requested . . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in an amount of up to $100 a day [increased by regulation to daily maximum of $110] from the date of such failure or refusal." 29 U.S.C. § 1132(c)(1).

Mem. in Support of Dfts' Mot. To        Olsen v. Alaska Teamst.-Empl. Welfare Plan, *et al*
Dismiss Non-ERISA Claims             4:11-cv-00015-RRB
Page 15 of 19

        1.     *Plaintiff Admittedly Received <u>Two</u> Timely Responses to His March 2010 Claim Submission, Completely Refuting Any Claim for ERISA Penalties Related Thereto*.

While Plaintiff intends to seek daily penalties regarding his request for preauthorization of TMJ surgery on or around March 31, 2010 (Dkt. No. 1, ¶ 11; Dkt. No. 18, at 3), he *admittedly* received not one but *two* timely responses to that initial request. Within 30 days after Plaintiff's initial claim submission on or around March 31, 2010, Plaintiff received: an April 12, 2010 letter from Qualis Health, indicating that his request for preauthorization had been denied, and an April 23, 2010 letter from the Plan also indicating that his claim was not approved. Dkt. No. 17, ¶¶ 16, 20. This plainly cannot constitute an actionable failure or refusal "to comply with a request for any information . . . *within 30 days after such request*" under ERISA § 502(c). *See* ERISA § 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B) (emphasis added).

        2.     *Plaintiff Offers No Factual Allegations in Support of His Claim for Penalties*.

In addition to refuting a penalties claim regarding the March 31 2010 initial benefit claim submission, Plaintiff's Amended Complaint does not contain even a "threadbare recital" of the elements of a cause of action for ERISA § 502(c)(1) daily penalties.

A plan participant must specifically request a document that he or she is entitled to receive before any liability may be imposed for failure to provide requested documents. *Williams v. Caterpillar, Inc.,* 944 F.2d 658, 667 (9th Cir. 1991). The Amended Complaint does not contain *any factual allegations whatsoever* to support a claim that Plaintiff requested specific documents on March 31, 2010, and that such documents were not provided within 30 days. In fact, instead of providing detailed, specific factual allegations to support a claim that particular documents or information were requested on March 31, 2010 but not provided within 30 days,

Mem. in Support of Dfts' Mot. To Dismiss Non-ERISA Claims
Page 16 of 19

Olsen v. Alaska Teamst.-Empl. Welfare Plan, *et al*
4:11-cv-00015-RRB

Plaintiff's allegations in the Amended Complaint only demonstrate the opposite and refute any claim for penalties regarding that submission.

> 3. *Plaintiff's Claim of Penalties Related to His Initial Claim Submission is Unprecedented and Would Produce Absurd Results*.

Plaintiff's apparent argument that he is entitled to daily penalties under ERISA § 502(c)(1) as a result of his claim submission is unprecedented, and would produce absurd results. By suggesting that he is entitled to over 600 days' worth of penalties that would continue to accrue throughout this litigation when Plaintiff *admittedly did receive* a timely claim determination, Dkt. No. 18, at 3, Plaintiff attempts to create additional ERISA remedies based solely on the notion that he did not receive a *favorable* claim determination. If, as Plaintiff appears to assert, receiving an unfavorable initial claim determination provides a basis for ERISA § 502(c)(1) penalties if subsequent litigation finds the benefit denial in error, ERISA § 502(c)(1)'s penalties are transformed into a "bonus" for winning one's case – which would create exactly the type of compensatory relief that the Ninth Circuit has held is unavailable under ERISA. *See Bast*, 150 F.3d at 1008-09.[8] ERISA § 502(c)(1) simply cannot be read to produce the result Plaintiff seeks or its logical consequences, and Plaintiff's claim for penalties related to his initial claim submission should therefore be dismissed on that basis as well as the lack of any potential merit to a claim that Plaintiff did not receive a timely response in April 2010.

## V. Conclusion

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss Plaintiff's claims of: breach of contract; fiduciary breach and structural

---

[8] Indeed, if Plaintiff were correct, cases requiring longer to adjudicate would lead to greater potential penalty awards, which would create an incentive to delay or draw out litigation.

Mem. in Support of Dfts' Mot. To  
Dismiss Non-ERISA Claims  
Page 17 of 19

Olsen v. Alaska Teamst.-Empl. Welfare Plan, *et al*  
4:11-cv-00015-RRB

conflict of interest; damages for pain and suffering, emotional distress, and loss of consortium; and ERISA penalties related to the March 31, 2010 initial claim submission.

DATED this 27th day of December, 2011, at Seattle, Washington.

By:  s/ Michael P. Monaco

SONG MONDRESS PLLC
Counsel for Defendants
Alaska Teamster-Employer
Welfare Plan and Board of Trustees
720 Third Ave., Suite 1500
Seattle, WA 98104
E-mail:  mmonaco@songmondress.com
Phone:  (206) 398-1500
Fax:  (206) 398-1501

Ronald L. Bliss
BLISS, WILKENS & CLAYTON
500 L. Street, Suite 200
Anchorage, AK  99501
E-mail:  rlb@bwclawyers.com
Phone:  (907) 276-2999
Fax:  (907) 276-2956
(ABA No. 7605011)

Mem. in Support of Dfts' Mot. To
Dismiss Non-ERISA Claims
Page 18 of 19

Olsen v. Alaska Teamst.-Empl. Welfare Plan, *et al*
4:11-cv-00015-RRB

**CERTIFICATE OF SERVICE**

I hereby certify that on December 27, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Jason A. Weiner
Gazewood & Weiner, PC
1008 16th Avenue
Suite 200
Fairbanks, AK 99701

                                                s/ Michael P. Monaco

Mem. in Support of Dfts' Mot. To          Olsen v. Alaska Teamst.-Empl. Welfare Plan, *et al*
Dismiss Non-ERISA Claims                 4:11-cv-00015-RRB
Page 19 of 19