# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JUSTIN OLSEN,<br><br>        Plaintiff,<br><br> v.<br><br>ALASKA TEAMSTER-EMPLOYER WELFARE PLAN, and THE BOARD OF TRUSTEES,<br><br>        Defendants. | Case No. 4:11-CV-00015-RRB<br><br>Order Granting Defendants' Motion For Summary Judgment and Denying Plaintiff's Motion For Summary Judgment |

**I.    INTRODUCTION**

Before the Court are Defendants Alaska Teamster-Employer Welfare Plan ("Plan") and its Board of Trustees ("Board") with a motion for summary judgment at Docket Number 44 and Plaintiff Justin Olsen with a motion for summary judgment at Docket Number 47. Defendants argue that claims brought pursuant to the underlying Employee Retirement Income Security Act ("ERISA") plan should be reviewed under the abuse-of-discretion standard and solely on the basis of the administrative record below.[1] Defendants further contend that even under a de novo review, the decision to deny Olsen's claim was correct because the temporomandibular joint ("TMJ") surgery that Olsen requested be preauthorized was not medically necessary.[2]

---

[1] Docket No. 58 at 1.

[2] *Id.*

Additionally, Defendants insist that Olsen "is not entitled to ERISA § 502(c)(1) penalties as a matter of law."[3]

Olsen counters that the Court should review the claim denial under a de novo standard and that the ERISA claim should have been granted because the evidence proved that TMJ surgery was medically necessary to relieve Olsen's pain.[4] Olsen alleges that the Board failed to properly respond to his March 31, 2010, preauthorization request.[5] Furthermore, Olsen seeks penalties under 29 U.S.C. § 1132(c)(1)(B) for the Board's alleged failure to respond within thirty days to Olsen's "request for 'any documents pertaining to Mr. Olsen's denial and subsequent appeal . . . .'"[6] The Court adopts the background facts established in its Order at Docket Number 36 at 2-4.

Inasmuch as the Court concludes that the Board did not abuse its discretion in denying Olsen's claim for benefits under the Plan, that the Board's response to Olsen's March 31, 2010, preauthorization request does not affect the standard of review or constitute an abuse of discretion, and that Olsen's May 17, 2011, request for documents does not fall under the

---

[3] Id.

[4] Docket No. 52 at 10-11.

[5] Docket No. 55 at 6.

[6] Id. at 12.

protection of 29 U.S.C. § 1132(c)(1)(B), Defendants' Motion For Summary Judgment is **GRANTED**, and Plaintiff's Motion For Summary Judgment is **DENIED**.

## II. DISCUSSION

### A. Abuse-of-discretion standard of review applies.

The threshold question concerns the appropriate standard of review. A denial of benefits under an ERISA plan is reviewed de novo "unless the plan provides to the contrary."[7] "Where the plan provides to the contrary by granting 'the administrator or fiduciary discretionary authority to determine eligibility for benefits,'" the Court employs an abuse-of-discretion standard.[8] However, the grant of discretion must be clear, and the plan should define the scope of discretion such that the conferral is unambiguous.[9] Additionally, the discretion must be "'unambiguously retained'" by a plan administrator.[10]

"[W]here the abuse of discretion standard applies in an ERISA benefits denial case, 'a motion for summary judgment is merely the conduit to bring the legal question before the district

---

[7] *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 110-11 (2008) (emphasis added) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

[8] *Id.* (quoting *Firestone*, 489 U.S. at 115).

[9] *Thomas v. Or. Fruit Prods. Co.*, 228 F.3d 991, 994-95 (9th Cir. 2000).

[10] *Opeta v. Nw. Airlines Pension Plan for Contract Emps.*, 484 F.3d 1211, 1216 (9th Cir. 2007) (quoting *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir.1999) (en banc) (internal quotations omitted)).

3

court and the usual tests of summary judgment . . . do not apply.'"[11] Under such a deferential standard, "the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'"[12] Indeed, "[a] plan administrator's decision to deny benefits must be upheld . . . if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith."[13] Yet, "[r]easonableness does not mean that we would make the same decision. We must judge the reasonableness of the plan administrator skeptically . . . ."[14] Specifically, an abuse of discretion requires the court to be "'left with a definite and firm conviction that a mistake has been committed . . . .'"[15] Such conviction can be arrived at by determining "whether application of a correct legal standard was '(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'"[16] In essence, when a court reviews an ERISA benefits denial case, it "is making something akin to a credibility determination about the insurance company's or plan administrator's reason for denying coverage under a particular plan

---

[11]*Nolan v. Heald Coll.*, 551 F.3d 1148, 1154 (9th Cir. 2009) (quoting *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999)).

[12]*Conkright v. Frommert*, 559 U.S. 506, 130 S.Ct. 1640, 1642 (2010) (quoting *Firestone*, 489 U.S. at 111).

[13]*McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1113 (9th Cir. 2000).

[14]*Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 675-76 (9th Cir. 2011).

[15]*Id.* (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

[16]*Id.* (quoting *Hinkson*, 585 F.3d at 1262).

4

and a particular set of medical and other records."[17]  Nonetheless, "'ERISA plan administrators abuse their discretion if they render decisions without any explanation, . . . construe provisions of the plan in a way that conflicts with the plain language of the plan or rel[y] on clearly erroneous findings of fact.'"[18]

One of the factors that a court looks at when determining if an ERISA plan administrator's claim denial constituted an abuse of discretion is whether or not the administrator was operating under a conflict of interest.[19]  If an administrator's decision involves such a conflict, it deserves a "a higher degree of skepticism . . . ."[20]  The significance of the conflict "will depend upon the circumstances of the particular case."[21]  Notably, the Ninth Circuit has established that when "it is the employer that both funds the plan and evaluates the claims[,]" there is a conflict of interest.[22]  However, where an ERISA plan is a *multi-employer plan* that is funded by the participating employers and the decision to grant or deny benefits is made by a

---

[17]*Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965-69 (9th Cir. 2006).

[18]*Day v. AT&T Disability Income Plan*, 698 F.3d 1091, 1096 (9th Cir. 2012) (quoting *Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1472 -73 (9th Cir. 1994) (internal quotations omitted)).

[19]*Metro.*, 554 U.S. at 110-11 (quoting *Firestone*, 489 U.S. at 115).

[20]*Salomaa*, 642 F.3d at 675-76.

[21]*Id.* at 674.

[22]*Metro.*, 554 U.S. at 112-19.

5

separate entity, a board of trustees, which does not fund the plan, *no conflict exists*.[23] This lack of conflict is made further apparent when the board of trustees "consists of both management and union employees . . . ."[24]

Here, the evidence overwhelmingly supports the use of the abuse-of-discretion standard of review.[25] First, the Plan clearly grants discretion to the Board to determine eligibility for benefits under the Plan.

> The Board of Trustees and its Administrative Committee are *granted the sole and exclusive discretionary authority to administer and interpret the Plan* and all administrative and trust documents, including: *making all factual and equitable determinations and deciding coverage, eligibility, participation and the amount of benefits payable (if any), and the meaning and applicability of Plan provisions*. Any such determinations shall be conclusive and binding on all parties having dealings with the Plan.[26]
> . . . .
> The Administrative Committee of the Board of Trustees reviews appeals of denied claims and makes final determinations. *The Administrative Committee has full discretionary authority, including power to administer, construe and interpret the terms and provisions of the Plan . . . .*[27]

---

[23]*Anderson*, 588 F.3d at 648.

[24]*Id.* (quoting *Jones v. Laborers Health & Welfare Trust Fund*, 906 F.2d 480, 481 (9th Cir. 1990)).

[25]Going outside of the administrative record to determine the correct standard of review is not necessary because there is no evidence that the Board has a conflict of interest. *Nolan*, 551 F.3d at 1153-54 (where there exists a conflict of interest, evidence outside of the administrative record may be necessary to determine the appropriate standard of review).

[26]Docket No. 22-1 at 3 (emphasis added).

[27]*Id.* at 82-83 (emphasis added).

6

The Plan precisely defines the scope of the discretion granted to the Board, and it is undisputed that the Board has unambiguously retained and exercised such discretion in denying Olsen's claim. Therefore, the Plan language meets the requirements set out in *Metropolitan*, *Thomas*, and *Opeta*.

Second, Olsen's reasoning that an alleged conflict of interest on the part of the Board necessitates a de novo review is incorrect. A potential conflict of interest is *merely a factor* to consider under an *abuse-of-discretion* analysis; it does not change the standard of review to de novo.[28] Furthermore, because the Plan is a multi-employer plan,[29] because the Board is comprised of an equal number of management and union representatives[30], and because all of the Plan's assets are held solely for providing benefits to participants and beneficiaries and cannot revert to any employer or trustee, the Board does not operate under a conflict of interest.[31]

Third, Olsen argues that under *Kunin v. Benefit Trust Life Insurance Company,* 910 F.2d 534, 539-40 (9th Cir. 1990), the ambiguity of the Plan term "medically necessary" requires "a *de*

---

[28]*Metro.*, 554 U.S. at 110-11 (quoting *Firestone*, 489 U.S. at 115).

[29]Docket No. 22-1 at 91.

[30]29 U.S.C. § 186(c)(5) (1995); Docket No. 22-1 at 91.

[31]29 U.S.C. § 1103(c)(1) (2012); Docket No. 22-1 at 89. The Court will not address Olsen's unsupported contention that Defendants' two independent medical reviewers, Qualis Health and AllMed Healthcare, are in fact, not independent of Defendants.

7

*novo* standard."[32] But the district court decision in *Kunin* was superseded by *Firestone Tire and Rubber Company v. Bruch*, 489 U.S. 101 (1989), which "adopted a substantially different rule concerning the standard of review" in ERISA benefits denial cases.[33] Under *Firestone*, the standard of review is either de novo or abuse-of-discretion.[34] *Kunin* is wholly inapplicable to this case.[35]

Furthermore, upon reviewing the Plan, the Court finds that the term "medically necessary" is clearly defined.

> Services and supplies are "*Medically Necessary*" or provided due to "Medical Necessity" if such service or supply is determined by the Plan to be: 1. *appropriate and necessary for the symptoms, diagnosis or treatment of an Illness, Injury or condition*; and 2. *not Experimental and/or Investigational*; and 3. *not primarily for the convenience of the Participant, the Participant's Physician or another provider*; and 4. *not primarily for research or data accumulation*; and 5. *within the standards of generally accepted medical practice and professionally recognized standards within the organized medical community in which services are provided*; and 6. *the most appropriate supply or level of service which can safely be provided*. When applied to hospitalization, *Medically Necessary* means that *the symptoms or condition cannot safely and adequately be treated on an outpatient basis*.[36]

---

[32] Docket No. 52 at 11.

[33] *Kunin*, 910 F.2d at 537.

[34] *Id.*

[35] Furthermore, the ERISA plan in *Kunin* did not grant discretion to the plan administrators. In fact, the *Kunin* court did not even reach the issue of administrator discretion and its effect on the standard of review, which is the lynchpin of the standard of review question here.

[36] Docket No. 22-1 at 98-99 (emphasis added).

8

Moreover, the Plan gives the Board complete discretion to interpret the terms of the Plan, including the term "medically necessary."[37] Accordingly, the Court reviews Olsen's claim denial under the abuse-of-discretion standard.

**B.    Court's review will be based solely on the administrative record.**

Olsen opines that because the Board operates under a conflict of interest, the Court must go outside of the administrative record when reviewing the validity of Olsen's claim denial.[38] "'In most cases[,]' only the evidence that was before the plan administrator at the time of determination should be considered."[39] Indeed, "[w]hile under an abuse of discretion standard our review is limited to the record before the plan administrator . . . ."[40] However, evidence outside of the record *may* be considered by a court performing a *de novo* review "under certain limited circumstances" that "'establish[] that additional evidence is necessary . . . .'"[41] Yet, "'a

---

[37]*Id.* at 3, 82-83.

[38]Docket No. 55 at 5. Olsen fails to make the specific argument that potential procedural deficiencies require the Court to review evidence outside of the administrative record; thus, the Court will not address such issue.

[39]*Opeta*, 484 F.3d at 1217-18 (alteration omitted) (quoting *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir. 1995)).

[40]*Jebian v. Hewlett-Packard Co. Emp. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1110 (9th Cir. 2003) (citing *McKenzie v. Gen. Tel. Co.*, 41 F.3d 1310, 1316 (9th Cir. 1994)).

[41]*Opeta*, 484 F.3d at 1217-18 (emphasis added) (quoting *Mongeluzo*, 46 F.3d at 943-44).

9

district court should not take additional evidence merely because someone at a later time comes up with new evidence . . . .'"[42]

Because the Court is proceeding under the abuse-of-discretion standard of review, because there is no evidence of any conflict of interest on the part of the Board, because circumstances do not exist that warrant additional evidence, and because new evidence not found in the administrative record is not properly before the Court, the Court will conduct its review of Olsen's denial of benefits claim strictly from the evidence contained in the administrative record.

### C. The Board did not abuse its discretion by denying Olsen's claim.

Olsen argues that the Board violated ERISA by denying his claim for preauthorization of a TMJ surgery and follow-up treatment performed by Dr. Larry Wolford.[43] After reviewing the evidence that the Board found and the medical records submitted by Olsen, the Board determined that the procedure was not "medically necessary."[44] Based on the record before the Court, the Board's denial was reasonable and did not violate ERISA.

There is nothing in the administrative record that leaves the Court with a definite and firm conviction that the Board made a mistake when it denied Olsen's claim.[45] First, Olsen had every

---

[42]*Id.* (quoting *Mongeluzo*, 46 F.3d at 944).

[43]Docket No. 52 at 2.

[44]Docket No. 45 at 12.

[45]*See Salomaa*, 642 F.3d at 675-76 (quoting *Hinkson*, 585 F.3d at 1262).

10

opportunity to present medical evidence to the Board prior to the initial denial and during the multiple appeals concerning the alleged necessity of the TMJ surgery. In its initial determination of Olsen's claim, Qualis Health ("Qualis") identified specific information that it needed in order to determine that the proposed treatment was medically necessary and stated that Olsen could submit such additional information in the course of appealing the initial determination.[46] In its May 11, 2010, determination upholding the initial denial, Qualis again explained the basis for its determination and identified the missing evidence that resulted in a determination that the proposed procedure was not medically necessary.[47] On July 19, 2010, before considering Olsen's appeal, the Board specifically requested all of Olsen's medical records and invited him to submit any other relevant documents that had not yet been provided.[48] Olsen responded regarding the medically necessity question in his appeal, but never provided any further medical documentation or physicians' statements to support his claim.[49] Olsen was given repeated explanations about the denial of his claim and was invited to submit other relevant documents to the Board for review.

---

[46] Docket No. 45 at 20; Docket No. 46-1 at 3-4.

[47] *Id.*; Docket No. 46-1 at 15.

[48] *Id.* at 20-21; Docket 46-1 at 26.

[49] *Id.* at 21; Docket 46-1 at 22-23.

11

Second, the Board's denial was not an abuse of discretion and was made in good faith. The Board's decision was based on an expansive review of Olsen's medical records, charts from treating medical providers, and opinions from two unrelated and independent medical reviewers. Also, the denial does not controvert the language of the Plan. In order to provide benefits for requested services and supplies, each service and supply must meet each of the six stated conditions in order to be medically necessary.[50] At the time of Olsen's authorization request, the Board determined, based on the Plan terms, that the TMJ surgery was not medically necessary. Such decision is not illogical, implausible, or without factual support.

Furthermore, nothing in ERISA "suggests that plan administrators must accord special deference to the opinions of treating physicians" or "imposes a heightened burden of explanation on administrators when they reject a treating physician's opinion."[51] The only evidence pointing to the necessity of TMJ surgery for Olsen comes from the most recent doctors' evaluations, those of Drs. O'Donoghue and Wolford. However, those doctors' conclusions were contrary to conclusions of at least ten other medical providers who personally examined Olsen and of other independent medical experts. For example: four treating physicians said that Olsen's headaches were caused by migraines and nothing else due to his family history of migraines;[52] one treating

---

[50]Docket No. 22-1 at 98-99.

[51]*Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003).

[52]Docket No. 45 at 24; Docket No. 46-1 at 57, 118, 125, 130.

physician stated that the migraines were caused by muscle tension;[53] two treating physicians, including Olsen's regular doctor in Alaska and an oral surgeon, said that Olsen's headaches and other pain were unrelated to Olsen's TMJ and that Olsen lacked the symptoms indicating a need for TMJ surgery;[54] the doctor that recommended TMJ surgery stated that Olsen had a better than normal jaw opening;[55] and Qualis and AllMed Healthcare ("AllMed") issued three opinions concluding that TMJ surgery was not warranted in Olsen's case.[56] Neither Olsen nor the doctors that he consulted with most recently provided responses to address the concerns expressed by the physicians opposed to the proposed TMJ surgery. The Board throughly explained the reasons behind their denial of Olsen's claim and made no erroneous finding of fact.

Olsen responds that regardless of the evidence before the Board at the time of their decision to deny his claim, the fact that his later TMJ surgery relieved his pain should serve to prove that the surgery actually was medically necessary, and the Board was wrong to not authorize the procedure.[57] However, because the Court is restricted to the administrative record for its review of Olsen's claim denial, any evidence that was not before the Plan, the Board, or the Plan's independent expert medical reviewers (Qualis and AllMed) before August 23, 2010

---

[53]*Id.*; Docket No. 46-1 at 94.

[54]*Id.*; Docket No. 46-1 at 61, 74, 76.

[55]*Id.*; Docket No. 46-1 at 13.

[56]*Id.*; Docket No. 46-1 at 5-6, 17-18, 137-39.

[57]Docket No. 55 at 1.

13

(the date of the final denial letter), and thus not part of the record before the Court, will not be considered.[58] The Board's denial of Olsen's request for benefits to cover his TMJ surgery was not an abuse of discretion.

> **D.** **April 12 letter does not affect the standard of review or constitute an abuse of discretion**.

Olsen alleges that the Board failed to "respond with complete answers" to his March 31, 2010, request for preauthorization for his TMJ surgery in violation of 29 U.S.C. § 1133(1).[59] Although the Court agrees that the Board's response to Olsen's March 31 request failed to meet the requirements of § 1133(1), such violation did not affect the standard of review nor was it an abuse of discretion.[60]

Under 29 U.S.C. § 1133(1), an ERISA plan shall "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the

---

[58]Docket No. 46-2 at 142-43. The extra-record evidence that will not be considered by the Court includes the five pieces of evidence referenced by Defendants at Docket Number 56 at 12. Additionally, Olsen's argument that the Board never made a final decision concerning benefit coverage for his TMJ surgery is belied by the August 23, 2010, final denial letter from the Board; the Court will not address this argument further.

[59]Docket No. 55 at 6.

[60]The Court will not analyze the omission in the April 12 response letter under the penalties rubric of 29 U.S.C. § 1132(c)(1)(B) because the March 31 inquiry was clearly not a request for documentation, but a basic preauthorization demand that does not fall under § 1132(c)(1)(B).

14

participant . . . ." Such notice must contain "[t]he specific reason or reasons for the adverse determination; . . . [r]eference to the specific plan provisions on which the determination is based; . . . [a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary . . . [and a] description of the plan's review procedures . . . . ."[61]

The Board sent two letters initially explaining Olsen's claim denial, a letter from Qualis on April 12, 2010,[62] and a letter from the Plan on April 23, 2010.[63] Defendants point out, and Olsen does not dispute, that the April 23 letter contained an erroneous justification for Olsen's claim denial.[64] Therefore, due to the inaccurate nature of the April 23 letter, the Court will treat the April 12 letter as the sole response to Olsen's March 31 preauthorization request.

The April 12 letter stated that the documentation submitted by Olsen did "not support the medical necessity to approve" the TMJ surgery at that time.[65] The letter went on to list the necessary documents that were absent from the review and outlined the steps required to appeal the decision. However, the letter failed to reference the specific plan provisions on which the

---

[61] 29 C.F.R. § 2560.503-1(g)(1)(i), (ii), (iii), (iv) (2001).

[62] Docket No. 46-1 at 5-6.

[63] *Id.* at 19-21.

[64] Docket No. 45 at 12.

[65] Docket No. 46-1 at 5-6.

15

determination was based. Thus, the April 12 letter was deficient and did not meet the ERISA response requirements. Yet, such deficiency does not change the standard of review.

It is a "'rare class of case[]'" where a procedural error changes the standard of review.[66] In order for a error involving an ERISA procedural requirement to necessitate a de novo review, the error must constitute a "'wholesale and flagrant violation . . . .'"[67] The violation must be "'so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm.'"[68] When an error "'fall[s] so far outside the strictures of ERISA that it cannot be said that the administrator exercised the discretion that ERISA and the ERISA plan grant, no deference is warranted.'"[69] A change in standard requires that the error involve the administrator "act[ing] in utter disregard of the underlying purpose of the plan . . . ."[70]

Despite no reference to the Plan in the April 12 letter, the reasons for the denial were clear to Olsen, and he was in no way hindered or burdened by the omission of the exact Plan provisions that formed the basis for the denial. Such lack of harm is proven by Olsen's June 3, 2010, letter in which he referenced Qualis' May 11, 2010, letter upholding the original denial in

---

[66]*Anderson*, 588 F.3d at 646-48 (quoting *Abatie*, 458 F.3d at 972).

[67]*Day*, 698 F.3d at 1096 (quoting *Abatie*, 458 F.3d at 971).

[68]*Abatie*, 458 F.3d at 971-72 (quoting *Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978, 985 (9th Cir. 2005)).

[69]*Day*, 698 F.3d at 1096 (quoting *Abatie*, 458 F.3d at 972).

[70]*Anderson*, 588 F.3d at 646-48 n. 1 (quoting *Abatie*, 458 F.3d at 971).

the April 12 letter based on the medical-necessity justification.[71]  At no time and nowhere in the record does it appear that Olsen was not fully aware of the reason for his claim denial and how it was supported by the Plan language.  Furthermore, one of Olsen's principle arguments is the alleged ambiguity of the term "medically necessary."  Clearly, Olsen understood that the primary reason behind the denial was that the Board considered his TMJ surgery to not be medically necessary.  Thus, a change to a de novo standard of review is not necessary.

Additionally, the procedural omission in the April 12 letter does not rise to the level of an abuse of discretion.  Although "[m]ost procedural errors do not alter the abuse of discretion standard, . . . the court should consider such errors when deciding whether the administrator abused its discretion."[72]  However, "[w]hen an administrator can show that it has engaged in an 'ongoing, good faith exchange of information between the administrator and the claimant,' the court should give the administrator's decision broad deference notwithstanding a minor irregularity."[73]  For the reasons given above, the April 12 omission was not an abuse of discretion.  The Board and Olsen had a good faith exchange of information and the omission was a minor irregularity that did not affect or harm Olsen.  Therefore, the lack of reference in the

---

[71]Docket 46-1 at 22-23.

[72]*Anderson*, 588 F.3d at 646-48 (citing *Abatie*, 458 F.3d at 972).

[73]*Abatie*, 458 F.3d at 971-72 (quoting *Jebian*, 349 F.3d at1107).

17

April 12 letter to the exact Plan provisions upholding the denial justification does not constitute an abuse of discretion.

### E. Penalties under 29 U.S.C. § 1132(c)(1)(B) are not warranted.

Olsen claims that the Board failed "to respond within thirty days" to his request on May 17, 2011, for any documents pertaining to Olsen's denial and subsequent appeal. Olsen opines that for their failure to timely send the documents, Defendants are liable for penalties owed under 29 U.S.C. § 1132(c)(1)(B) of up to $100.00 per day beyond the thirty-day limit.[74] However, Olsen's argument is unpersuasive.

Under 29 U.S.C. § 1132(c)(1)(B):

> Any administrator who fails or refuses to comply with a *request for any information* which such administrator is *required by this subchapter* to furnish to a participant or beneficiary . . . within 30 days after such request *may in the court's discretion* be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal . . . .[75]

---

[74]*Id.*

[75]Emphasis added. In its previous order, the Court failed to clarify that under 29 U.S.C. § 1132(c)(1)(B), an administrator must comply within thirty days with a request for information that he or she is required to provide to plan participants or beneficiaries *solely* under *Subchapter I of Chapter 8 of Title 29 of The United States Code*, not *any* information that he or she is required to provide. Docket No. 36 at 18.

18

Furthermore, "plan administrators have a fiduciary duty to 'give complete and accurate information in response to a participant's questions.'"[76] However, "[a]lthough prejudice is not required to prevail on a section 1132(c) penalty claim, most courts do inquire as to whether the claimant has suffered some type of prejudice before exercising the discretion vested in them under section 1132(c)."[77]

Here, Olsen's May 17 request for documents does not fall under the subchapter required by 29 U.S.C. § 1132(c)(1)(B) to trigger noncompliance penalties, Subchapter I of Chapter 8 of Title 29 of The United States Code. Rather, Olsen's document request falls under Part 2560 of Subchapter G of Chapter XXV of Subtitle B of Title 29 of The Code of Federal Regulations, specifically, 29 C.F.R. § 2560.503-1(h)(2)(iii) ("[C]laimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits."). Thus, Olsen's document request does not trigger § 1132(c)(1)(B) penalties, and it is clear that Olsen has not suffered any prejudice from his unfulfilled request. Olsen was given a full and fair review, and he actively participated in the determination of his claim appeal through numerous opportunities to submit relevant medical evidence and repeated expert reviews of his submissions. Furthermore, Olsen's request occurred

---

[76] *Kaiser Permanent Emps. Pension Plan v. Bertozzi*, 849 F.Supp. 692, 699 (N. D. Cal. 1994) (quoting *Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992)).

[77] *Id.* at 702.

19

nine months after the final claim denial, so the documents could not have been used in any appeal of his denial. Therefore, because Olsen's document request does not fall under the protection of § 1132(c)(1)(B), and because Olsen does not appear to have been prejudiced by the Board's failure to provide the requested documents, the Court will not exercise its discretion to grant § 1132(c)(1)(B) penalties to Olsen for his May 17, 2011, documents request.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion For Summary Judgment at **Docket Number 44** is hereby **GRANTED**, and Plaintiff's Motion for Summary Judgment at **Docket Number 47** is hereby **DENIED**.

**ORDERED** this 8th day of April, 2013.

                                       S/RALPH R. BEISTLINE
                                       UNITED STATES DISTRICT JUDGE